UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No.: 10-61671-CIV-MORENO/BROWN

AIROJET CHARTERS, INC.,
a Nevada corporation, and CSSJ
AVIATION, LLC, an Arkansas
limited liability company,

    Plaintiffs,

vs.

CATLIN INSURANCE COMPANY,
INC., a Texas corporation,

    Defendant.
_____/

**DEFENDANT'S MOTION TO STRIKE AFFIDAVIT OF HUNTER CANTWELL AT D.E. 113-6 AND INCORPORATED MEMORANDUM OF LAW**

NOW COMES the Defendant, CATLIN INSURANCE COMPANY, INC. ["Catlin" or "Defendant"], by and through its attorneys, TRESSLER, LLP, and hereby moves to strike the affidavit of Hunter Cantwell provided by Plaintiffs, Airojet Charters, Inc. and CSSJ Aviation, LLC ["Plaintiffs"], in conjunction with their response to Catlin's Motion for Summary Judgment. In support of its motion, Catlin states as follows:

**I.**    **STATEMENT OF FACTS**

1.    Catlin timely filed a Motion for Summary Judgment, Incorporated Memorandum of Law, and Statement of Undisputed Facts, D.E. 74, on April 21, 2011.

2.    Plaintiffs timely filed a Response thereto, including a responsive Memorandum of Law, D.E. 112, and a responsive Statement of Facts, D.E. 113, on May 23, 2011.

3. Plaintiffs attached an affidavit of Hunter Cantwell, dated May 20, 2011, in support of their Response to Catlin's Motion. (See Affidavit of Cantwell, Exhibit F to Plaintiffs' Response to Catlin's MSJ).

4. In Cantwell's affidavit dated May 20, 2011, Cantwell states that Airojet's aircraft was stolen while it was in Venezuela in May of 2010. (Exhibit F to Plaintiffs' Response to Catlin's MSJ, ¶ 4).

5. Cantwell was not in Venezuela in May of 2010 and last saw the aircraft when it left Ft. Lauderdale in early May 2010. (Exhibit F to Plaintiffs' Response to Catlin's MSJ, ¶ 5).

6. Cantwell was told that the aircraft was stolen in Venezuela by David Hinds. (Exhibit F to Plaintiffs' Response to Catlin's MSJ, ¶ 14).

7. In Cantwell's affidavit dated May 20, 2011, he states that "David Hinds was not required to tell Airojet every single time he moved the aircraft nor was he required to tell Airojet before he moved the aircraft." (Exhibit F to Plaintiffs' Response to Catlin's MSJ, ¶ 6).

8. At his Examination Under Oath, Cantwell was asked whether Hinds had authority to take the aircraft anywhere other than the Dominican Republic and Cantwell responded as follows: "he had authority to operate the aircraft, we told him he had to call us every time he moved the aircraft." (Cantwell's Examination Under Oath, attached as Exhibit A, pg. 36).

9. As a follow up to this response, Cantwell was asked "So, that he [Hinds] had authority to use it whenever he wanted as long as he got pre-approval?" and Cantwell responded "He contacted us in – in right …. We asked him and he agreed to contact us before moving of the aircraft." (Ex. A, pp. 36-37).

2

10. At his deposition, Cantwell was asked: "Did you discuss with Mr. Hinds before his departure that he would be required to get authority from you to fly the aircraft to other locations other than what you had discussed with him?" Cantwell responded: "I told him to notify us any time he moves the aircraft." (Deposition of Cantwell, attached as Exhibit B, pg. 37).

11. At his deposition, Cantwell testified regarding an email dated May 12, 2010, sent to Hinds by Alan Cohn, at Cantwell's request, wherein Hinds is reprimanded for not informing Airojet of his flight plans with the aircraft and he is reminded that he is required by Airojet to do so. (Ex. B, pp. 114-118 and previously marked exhibit 79 thereto).

12. In his May 20, 2011, affidavit, Cantwell now states that the word "authority" is ambiguous to him because it may mean different things depending on the context. He states that "authority" may mean something different in the context of the Federal Aviation Administration, in the context of Airojet's authority, in the context of the authority of the country in which a flight takes place, or under Florida law. (Exhibit F to Plaintiffs' Response to Catlin's MSJ, ¶ 12). The word "authority" was not ambiguous in the context of Cantwell's prior statements.

13. In his affidavit dated May 20, 2011, Cantwell states: "David Hinds was never given exclusive or sole control or operation of the aircraft, to the exclusion of Airojet." (Exhibit F to Plaintiffs' Response to Catlin's MSJ, ¶ 7).

14. At his deposition, Cantwell was asked: "During the time that Mr. Hinds had the aircraft after leaving Ft. Lauderdale with the aircraft, would you agree that he had exclusive

control over the aircraft during that period?"  Mr. Cantwell responded:  "Yes, he had operation and control of the aircraft."  (Exhibit B, pp. 40-41).

    15.    In his affidavit dated May 20, 2011, Cantwell states:  "Airojet never entered into any agreement with David Hinds about the aircraft."  (Exhibit F to Plaintiffs' Response to Catlin's MSJ, ¶ 9).

    16.    At his deposition, Cantwell was asked:  "Did you have an agreement with Mr. Hinds as to when he was to return the aircraft to Ft. Lauderdale?"  Cantwell responded:  "Yes."  (Exhibit B, pg. 43).  Cantwell was also asked:  "So in any event, was there an understanding with Mr. Hinds that he would have the aircraft back before the 2nd of June?" and Cantwell responded:  "Yes."  (Exhibit B, pg. 43).

    17.    Cantwell's deposition testimony also includes the following:

Q:    "Did you speak with Mr. Hinds about the arrangements for his use of the aircraft to go to the Dominican Republic?"

A:    "Yes."

Q:    "And am I correct in saying that the terms of the agreement were that Mr. Hinds would show the aircraft at certain locations in the Bahamas? - -

A:    "And he wanted to use the airplane - - sorry, go ahead."

Q:    And then he would use the airplane for a personal flight to visit his father - -

A:    "Right."

Q:    - - in the Dominican Republic, correct?"

A:    "Correct."

Q: "And in exchange for showing the aircraft at certain locations such as Nassau or Freeport, he in exchange could use the aircraft to go to the Dominican Republic, and he would not have to pay any engine reserve time, just simply his expenses?"

A: "Yes."

Q: "Is that a fair statement of your agreement with Mr. Hinds?"

A: "Yes."

(Exhibit B, pp. 36-37).

18. In his affidavit dated May 20, 2011, Cantwell states that Hinds did not exceed his authority to fly the aircraft by flying to (or "toward" as the facts ultimately revealed) Venezuela. (Exhibit F to Plaintiffs' Response to Catlin's MSJ, ¶ 11).

19. At his deposition, Cantwell testified as follows:

Q: "Did you report to Mr. Gray [his broker] that Mr. Hinds had made an unauthorized flight?"

A: "Yes."

(Exhibit B, pp. 121-122).

20. Cantwell also previously stated under oath on four separate occasions that Hinds was not authorized to conduct the subject charter flight to Venezuela. (Exhibit A, pp. 43-44, Affidavit of Cantwell dated July 7, 2010, attached hereto as Exhibit C, ¶ 14, Affidavit of Cantwell dated July 26, 2010, attached hereto as Exhibit D, ¶ 7-8, Exhibit B, pp. 121-122, 180).

I. **MEMORANDUM OF LAW AND ARGUMENT**

Florida law supports the striking of Cantwell's May 20, 2011, affidavit as a sham because said affidavit is completely contradictory to his prior testimony and Cantwell has offered

insufficient or no explanations for the contradictions. Cantwell's May 20, 2011, affidavit should be stricken on the additional basis that Plaintiffs failed to provide Catlin with this evidence, which is from a party to this case, during the discovery period. Finally, portions of Cantwell's May 20, 2011, affidavit are not based on personal knowledge and are improper subjects of an affidavit under Florida law.

### CANTWELL'S MAY 20, 2011 AFFIDAVIT CONSTITUTES A SHAM

Numerous statements in Cantwell's affidavit dated May 20, 2011 are directly contradictory to prior statements made by Cantwell under oath – and on multiple occasions. Under Florida law, an affidavit may be stricken and disregarded as a sham if the declarant contradicts, without explanation, his prior testimony that established there were no genuine issues of material fact. Lorentz v. Sunshine Health Products, Inc., 2010 U.S. Dist. LEXIS 101019, *32 (S.D. Fla. 2010) citing Lawver v. Hillcrest Hospice, Inc., 300 Fed.Appx. 768, 711 (11th Cir. 2008). In addition, "when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc., 736 F.2d 656, 657 (11th Cir. 1984).

In his May 20, 2011, affidavit, Cantwell attempts to create an issue of fact regarding whether Hinds was required to notify Airojet prior to moving the aircraft by merely stating that Hinds was not so required. However, at his Examination Under Oath and at his deposition, Cantwell gave clear answers to unambiguous questions and he clearly stated, under oath, that Hinds was told to notify Airojet prior to moving the aircraft. Perhaps most tellingly, at his

6

deposition, Cantwell testified regarding an email sent to Hinds in May of 2010, at Cantwell's request, wherein Hinds was reprimanded for not informing Airojet of his flight plans with the aircraft and he was reminded that he was required by Airojet to do so.  Cantwell's prior, sworn statements, and his admitted prior <u>actions</u>, negate the existence of any genuine issue of material fact pertaining to this issue.

      Cantwell has provided an insufficient explanation for his new statement that directly contradicts his prior testimony.  Under Florida law, Plaintiffs may not now create an issue of fact by merely submitting an affidavit contradictory to Cantwell's prior, clear testimony without a valid explanation for the contradiction.  Cantwell attempts to explain the contradiction by stating that the word "authority" is ambiguous to him because it may mean different things depending on the context.  However, this explanation is disingenuous and insufficient to explain the contradiction.  Cantwell was clearly asked whether Hinds needed to contact him (Cantwell) in order to obtain *Airojet's* authority.  Cantwell specifically stated that he had told Hinds to notify him (Cantwell) or us (Airojet) of any movement of the aircraft.  Cantwell was not confused as to the meaning of the word "authority" at either his Examination Under Oath or his deposition.  Nor was he confused when he signed his prior affidavits.  Cantwell's sudden, claimed confusion is insufficient, under Florida law, to create a genuine issue of material fact.  Instead, it is contrived and constitutes an obtuse and frankly awkward effort to change the facts in order to avoid the terms of the Catlin policy and applicable law.

      Additionally, in his May 20, 2011, affidavit, Cantwell attempts to create an issue of fact regarding whether Hinds had exclusive operation and control of the aircraft in May of 2010 by merely stating that Hinds had no such control over the aircraft at that time.  However, again,

Cantwell has previously provided a clear answer to an unambiguous question pertaining to this issue.  Specifically, Cantwell was asked "during the time that Mr. Hinds had the aircraft after leaving Ft. Lauderdale with the aircraft, would you agree that he had exclusive control over the aircraft during that period?" and Cantwell responded "yes, he had operation and control of the aircraft."  Neither Cantwell nor Plaintiffs have offered any explanation for this blatant contradiction and Plaintiffs may not now, under Florida law, attempt to create an issue of fact by merely submitting an affidavit that contradicts prior, unambiguous testimony.

In his May 20, 2011, affidavit, Cantwell also remarkably states that Hinds did not exceed his authority by piloting the aircraft toward Venezuela and that Airojet never entered into any agreement whatsoever with Hinds, pertaining to the aircraft.  However, both of these statements fly in the face of Cantwell's prior testimony.  Quite tellingly, immediately after being notified that the aircraft was missing, Cantwell sent an email to his insurance broker, Jeff Gray, wherein he unambiguously states (on his own accord and with no prompting by counsel) that Hinds' flight toward Venezuela was unauthorized.  Cantwell previously stated under oath, *on four separate occasions*, that the flight was unauthorized.  In addition, not only has Cantwell previously testified that Airojet and Hinds had an agreement with respect to the aircraft, Cantwell also previously testified to that agreement's specific terms – namely, that Hinds was not permitted to charter the aircraft, Hinds had to return the aircraft to Airojet by June 2, 2010, and if Hinds flew the aircraft for advertisement purposes in the Bahamas, he was permitted to take the aircraft, for personal use, to the Dominican Republic and he would not be required to pay engine reserve time.  Neither Plaintiffs nor Cantwell have supplied any explanation for his new testimony indicating that Hinds' flight toward Venezuela was not unauthorized and that

Airojet and Hinds had no agreement whatsoever pertaining to the aircraft.  Again, Plaintiffs and Cantwell are attempting to create issues of fact where none exist, and subsequent to Cantwell providing clear answers to unambiguous questions which are contrary to statements contained in his "new" affidavit.

The only contradiction that Cantwell has attempted to explain is his prior testimony pertaining to Hinds' authority to move the aircraft.  Cantwell has disingenuously, and rather unbelievably, stated that the term "authority" is now ambiguous to him depending upon the context in which it is used.  However, in each prior instance wherein Cantwell testified regarding Hinds' authority to move the aircraft, the context was crystal clear.  Cantwell has provided no explanation whatsoever for the other blatant contradictions to his prior testimony.  Therefore, under Florida law, Cantwell's affidavit should be stricken and disregarded by this Court as a sham.

**THE MAY 20, 2011, AFFIDAVIT WAS NOT PROVIDED DURING THE DISCOVERY PERIOD**

Additionally, Cantwell's affidavit should be stricken because Plaintiffs failed to provide Catlin with this "evidence" during the discovery period.  In <u>Dedvukaj, Inc. v. Equilon Enterprises, LLC</u>, the court struck an affidavit provided after the close of discovery and stated that the "defendant was entitled to receive such evidence, and digest it, during the discovery period prior to filing this summary judgment motion."  301 F. Supp. 2d 664, 668 (E.D. Mich. 2004).  Catlin was entitled to receive this purported evidence from Plaintiffs prior to the close of discovery, particularly where, as here, the evidence is from a party to this case.  Therefore, Cantwell's May 20, 2011, affidavit should be stricken.

**PORTIONS OF CANTWELL'S AFFIDAVIT ARE NOT BASED UPON PERSONAL KNOWLEDGE**

Federal Rule of Civil Procedure 56(c)(4) provides that "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge and set out facts that would be admissible in evidence." <u>Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC</u>, 2011 U.S. Dist. LEXIS 53234, *3 (S.D. Fla. 2011). In Cantwell's May 20, 2011 affidavit, Cantwell states that Airojet's aircraft was stolen while it was in Venezuela in May of 2010. However, in this same affidavit, Cantwell states that Hinds told him of the "theft" of the aircraft. Cantwell was not in Venezuela in May of 2010 and Cantwell was not onboard the aircraft when it departed the Dominican Republic toward Venezuela. Cantwell's assertion that the aircraft was stolen while in Venezuela is based exclusively on what was reported to him (and others) by David Hinds – a person who has shown himself to be self-serving and untruthful. Cantwell has no personal knowledge pertaining to what transpired with the aircraft after he gave exclusive possession of the aircraft to David Hinds. Therefore, Cantwell's statement that the aircraft was stolen while it was in Venezuela is not based on the personal knowledge of Cantwell, is improper pursuant to Florida law and FRCP 56(c)(4), and should be stricken.

### III. <u>CONCLUSION</u>

WHEREFORE, Defendant CATLIN INSURANCE COMPANY, INC. respectfully requests that the Court grant its Motion to Strike and enter an order striking the affidavit of Hunter Cantwell attached to Plaintiffs' Response to Catlin Insurance Company's Motion for Summary Judgment and any other relief that this Court deems fair and appropriate.

Case No. :  10-61671-CIV-MORENO/BROWN

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that as counsel for the movant I have conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but have been unable to resolve the issues. Counsel for the movant has communicated with Counsel for the Plaintiffs, Ms. Conlon, Mr. Begy and Mr. Curtis, on the relief requested in this Motion, and counsel for Plaintiffs have refused to advise whether they oppose the relief sought in this Motion.  Counsel has even provided the draft Motion to Strike Hinds' Affidavit and the full opinion reported in *Hill v. Lazarou Enterprises, Inc.*, 2011 U.S. Dist. LEXIS 37849, 56 (S.D. Fla. 2011), prior to filing this Motion.

        Respectfully submitted,

        CATLIN INSURANCE COMPANY, INC.


        By:    /s/  Mark T. Banovetz
                One of Its Attorneys

Gregory P. Sreenan
Florida Bar No.:  473553
sreenang@bellsouth.net
SREENAN & ASSOCIATES, P.A.
44 West Flagler Street, Suite 1720
Miami, Florida  33130
Tel:  (305) 582-9125
Attorney for Defendant, Catlin Insurance Company, Inc.

Case No. :  10-61671-CIV-MORENO/BROWN

Mark T. Banovetz
Admitted Pro Hac Vice
mbanovetz@tresslerllp.com
TRESSLER, LLP
233 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606-6399
Tel:  (312) 627-4000
Fax:  (312) 627-1717
Attorney for Defendant, Catlin Insurance Company, Inc.


**Certificate of Service**

I hereby certify that on May 27, 2011, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/  Gregory P. Sreenan
GREGORY P. SREENAN

Case No. :  10-61671-CIV-MORENO/BROWN

**Service List**

<u>Airojet Charters, Inc. and CSSJ Aviation, LLC, v. Catlin Insurance Company, Inc.</u>
Case No.: 10-61671-CIV-MORENO/BROWN
United States District Court, Southern District of Florida, Miami Division

| Attorney for Plaintiffs<br><br>Edward R. Curtis, Esq.<br>Tripp, Scott, P.A.<br>110 SE 6th St., 15th Floor<br>Fort Lauderdale, FL 33301<br><br>Florida Bar No.:      236845<br><br>Telephone:    954-525-7500<br>Facsimile:     954-761-8475<br>E-mail:           erc@trippscott.com | Co-counsel for Plaintiffs<br><br>Carri A. Conlon, Esq.<br>Chuhak & Tecson, P.C.<br>30 S. Wacker Drive, Suite 2600<br>Chicago, IL 60606<br><br>Illinois Bar No.:      6257116<br><br>Telephone:    312-855-4617<br>Facsimile:     312-444-9027<br>E-mail:           cconlon@chuhak.com |
|---|---|
| Co-counsel for Plaintiffs<br><br>Fred C. Begy, III, Esq.<br>Chuhak & Tecson, P.C.<br>30 S. Wacker Drive, Suite 2600<br>Chicago, IL 60606<br><br>Illinois Bar No.:      0156876<br><br>Telephone:    312-855-5442<br>Facsimile:     312-368-9422<br>E-mail:           fbegy@chuhak.com | Co-counsel for Defendant<br><br>Gregory P. Sreenan, Esq.<br>Sreenan & Associates, P.A.<br>44 West Flagler Street, Suite 1720<br>Miami, FL 33130<br><br>Florida Bar No.:      473553<br><br>Telephone:    786-369-5529<br>E-mail:           sreenang@bellsouth.net |
| Co-counsel for Defendant<br><br>Jennifer F. Perdigao, Esq.<br>Tressler LLP<br>1901 Avenue of the Stars, Suite 450<br>Los Angeles, CA 90067-6006<br><br>Telephone:    310-203-4800<br>Facsimile:     310-203-4850<br>E-mail:           jperdigao@tresslerllp.com | Co-counsel for Defendant<br><br>Mark T. Banovetz, Esq.<br>Tressler LLP<br>233 South Wacker Drive, 22nd Floor<br>Chicago, IL 60606<br><br>Telephone:    312-627-4099<br>Facsimile:     312-627-1717<br>E-mail: mbanovetz@tresslerllp.com |